NORTHERN DISTRICT OF TEXAS

FILED

FEB - 6 2015

CLERK, U.S. DISTRICT COURT
By_____
        Deputy

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| DOUGLAS KRAUSE, | § |
|     PLAINTIFF, | § |
| | § |
| VS. | §   CIVIL ACTION NO. |
| | §   4:14-CV-140-A |
| | § |
| CAROLYN W. COLVIN, | § |
| ACTING COMMISSIONER OF SOCIAL | § |
| SECURITY, | § |
|     DEFENDANT. | § |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.   STATEMENT OF THE CASE

Plaintiff Douglas Krause ("Krause") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claim for a period of disability and disability

insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In March 2012,

Krause applied for DIB benefits alleging that he became disabled on December 30, 2011.

(Transcript ("Tr.") 13, 129-32.) His application was denied initially and on reconsideration. (Tr.

1

13, 65-69, 71-73.)  The ALJ held a hearing on June 6, 2013 and issued a decision on August 2,

2013 that Krause was not disabled.  (Tr. 10-24, 29-57.)  Krause filed a written request for review

of the ALJ's decision, and the Appeals Council denied the request on January 18, 2014, leaving

the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 1-7, 9.)

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous

regulatory provisions.  *See* 20 C.F.R. Pt. 404.  The SSA defines a disability as a medically

determinable physical or mental impairment lasting at least twelve months that prevents the

claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A);

*McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is

disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. §

404.1520.  First, the claimant must not be presently working at any substantial gainful activity.

Substantial gainful activity is defined as work activity involving the use of significant physical or

mental abilities for pay or profit.  20 C.F.R. § 404.1527.  Second, the claimant must have an

impairment or combination of impairments that is severe.  20 C.F.R. § 404.1520(c); *Stone v.*

*Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir.

2000).  Third, disability will be found if the impairment or combination of impairments meets or

equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt.

P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if disability cannot be found on the

basis of the claimant's medical status alone, the impairment or impairments must prevent the

claimant from returning to his past relevant work.  *Id.* § 404.1520(e).  And fifth, the impairment

2

must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.  ISSUES

In his brief, Krause presents the following issues:

1. Whether the new vocational expert ("VE") report submitted by Krause after the ALJ's decision constitutes new and material evidence that renders the ALJ's decision at Step Five not supported by substantial evidence;

2. Whether the ALJ's findings that Krause acquired transferable skills in "property management" and "customer service" without providing correlating Dictionary of Occupational Title ("DOT") codes or discussing workplace adjustment was sufficient to meet the Commissioner's burden at Step Five; and

3. Whether the ALJ erred in his duty to develop evidence of mental impairments based on evidence in the record and submitted to the Appeals Council relating to his mental impairments.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 10-20.)

### III.  ALJ DECISION

In his August 2, 2013 decision, the ALJ found that Krause met the insured status requirements of the SSA through December 31, 2016 and had not engaged in any substantial gainful activity since December 30, 2011, his alleged onset date of disability. (Tr. 15.) The ALJ further found that Krause suffered from the following severe impairments: (1) bilateral hearing loss, degenerative disc disease of the lumbar spine with radiculopathy, enlarged lymph nodes, dermatitis, vertigo, and headaches. (Tr. 15-17.) Next, the ALJ held that none of Krause's impairments, or combination of impairments, met or equaled the severity of any impairments in the listing. (*Id.* at 17.) As to Krause's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). The claimant occasionally is able to stoop, kneel, crouch, and crawl with no climbing of ladders, ropes, or scaffolds. He is not to work around hazards such as unprotected heights or dangerous moving

4

machinery.  Finally, the claimant should have the option to alternate between sitting and standing throughout the day.

(Tr. 17 (emphasis omitted).)  The ALJ next found that Krause was unable to perform any of his past relevant work but that he had acquired work skills from such past relevant work.  (Tr. 22.)  Then, the ALJ opined, based on Krause's RFC, age, education, and work experience, that Krause could perform other jobs that existed in significant numbers in the national economy.  (Tr. 22-23.)  Consequently, the ALJ found that Krause was not disabled.

On January 18, 2014, the Appeals Council issued its Notice of Appeals Council Action, stating that it had denied Krause's request for review of the ALJ decision.  (Tr. 1.)  Specifically, the Appeals Council stated:

> We also looked at a mental status examination from George R. Mount, PhD, dated October 8, 2013 (4 pages), and additional evidence from vocational consultant, Evelyn Hartman, dated November 4, 2013 (7 pages).  The Administrative Law Judge decided your case through August 2, 2013.  This new information is about a later time.  Therefore, it does not affect the question about whether you were disabled beginning on or about August 2, 2013.

(Tr. 2.)  Thereafter, Krause appealed the decision to this Court.

## IV.  DISCUSSION

### A.   VE Report Submitted to Appeals Council

Krause argues that the expert report from VE Evelyn Hartman ("VE Hartman") that was submitted to the Appeals Council after the ALJ's decision "constitutes new and material evidence that dilutes the ALJ's decision and requires, at minimum, remand because there is an irreconcilable conflict between the opinion of VE [Dillan] Snowden [("VE Snowden")], who

testified Krause had transferable work skills, and VE Hartman, whose report demonstrates otherwise." (Pl.'s Br. at 9.)

Social Security regulations allow claimants to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision to deny benefits. 20 C.F.R. § 404.970(b); *see Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 332 (N.D. Tex. 2003). The Appeals Council is required to evaluate the entire record, including any new and material evidence submitted by the claimant. *Id.* The Appeals Council's decision to decline to grant review of an ALJ's decision is part of the "final decision" and, as such, is reviewable in federal court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005). In the Fifth Circuit, "evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision." *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 (W.D. La. Aug. 28, 2009) (citing *Higginbotham*, 405 F.3d at 332 and *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006) ("*Higginbotham II*")). "Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based." *Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010). "A court considering [the] final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported." *Lee*, 2010 WL 3001904, at *7 (citing *Higginbotham II*, 163 F. App'x at 281-82).

Based on the foregoing, the issue before the Court is whether the new evidence, VE Hartman's report, that was submitted to the Appeals Council diluted the record to such an extent that the ALJ's determination at Step Five became insufficiently supported. In this case, as stated above, the ALJ, at Step Five, found that Krause had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. (Tr. 22-23.) In making such a determination, the ALJ relied on the testimony of VE Snowden that an individual with the same age, education, past relevant work experience, and RFC, could perform the jobs of a project manager and a work order clerk.[1] (Tr. 23.)

In this case, it appears that the expert report from VE Hartman that was submitted by Krause to the Appeals Council after the ALJ's decision does conflict with VE Snowden's testimony, which was relied on by the ALJ at Step Five. In its January 18, 2014 decision denying Krause's request for review of the ALJ's decision, the Appeals Council stated that it had considered the additional evidence from VE Hartman.[2] "Although the testimony of the two vocational experts [is] conflicting, 'conflicts in the evidence, including medical opinions, are to be resolved by the Secretary, not by the courts." *Skinner v. Shalala*, 47 F.3d 424, 1995 WL 71092, at *4 (5th Cir. 1995) (Jan. 25, 1995) (quoting *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)).[3] "This Court does not 'substitute its judgment for that of the Secretary' even if the

---

[1] VE Snowden also referred to this job title as "repair order clerk." (Tr. 55.)

[2] While the Appeals Council may have incorrectly stated it was not considering VE Hartman's evidence because it was new information about a later time, any such error is harmless as the ALJ's decision at Step Five is supported by substantial evidence—VE Snowden's testimony.

[3] The Court finds that this case, from the U.S. Court of Appeals for the Fifth Circuit is binding on this Court, unlike the case from the Eastern District of Texas, *Stanford v. Astrue*, No. 4:11-cv-106, 2013 U.S. Dist. LEXIS 26470, at *16-17 (E.D. Tex. Feb. 26, 2013), cited by Krause. While *Skinner* did not deal with the issue of

evidence 'preponderates toward a wholly different finding.'" *Id.* The ALJ's conclusion (which was affirmed by the Appeals Council) at Step Five that there were other jobs that existed in the national economy that Krause could perform, which was based upon the testimony of VE Snowden, is supported by substantial evidence in the record. The ALJ's decision is not subject to reversal, even if there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). Because the Court has found that the Appeals Council did not err in not adopting the opinions of VE Hartman, it will not consider the other issues raised by Krause as to such opinions.

### B. Step Five Issues

Krause also claims that, even without VE Hartman's report, the ALJ failed to meet his burden at Step Five to prove Krause can perform other work because "the ALJ failed to discuss workplace adjustment and failed to fully identify the transferable work skills without identifying the correlating jobs by DOT code." (Pl.'s Br. at 9.) Krause argues that this error prejudiced Krause, "who would otherwise have been found disabled." (Pl.'s Br. at 13.) Specifically, Krause states:

> Here, the ALJ failed to specifically classify Krause's past relevant work, which was described as a "warrant[y] manager" and "rehabilitation technician." Yet, there was no DOT code and merely the general description that it was "light,

---

conflicting VE evidence submitted to the Appeals Council, it did deal with conflicting VE evidence in the record before the ALJ.

skilled work." It is virtually impossible to identify transferable work skills without identifying the very job that imparted those skills. As VE Hartman indicated in her report, the DOT codes for Krause's past work was not requested by the ALJ nor provided by VE Snowden.

Similarly, the ALJ never identified the "project manager" position that these skills purportedly transfer to. Without knowing from whence they come and where they go, the Commissioner's entire "transferable skill" analysis is speculation.

Equally speculative are the skills themselves. The ALJ found that Krause acquired "property management skills and customer service skills." But "[i]t is unclear from the record exactly what entails a customer service skill or, more importantly, what there is about a customer service skill that requires more than thirty days to learn and gives plaintiff a special advantage over other job applicants." Similarly, the ALJ did not explain what "property management skills" are or even how or when they are acquired.

To the contrary, there is little about Krause's testimony that suggests his past employment conferred skills of any kind. According to Krause's Work History Report, his employment as a rehab technician required him to drive, unload his truck, and develop cost estimates, and lift up to one-hundred pounds or more in materials. Although he "ma[de] sure contractors were doing their jobs correctly according to the contract," there was no indication of how detailed or intricate this oversight was, nor was there any indication it was a "property management skill" as the ALJ found and not mere foreman work. Although his employment as a warranty manager required him to set appointments and manage contractors, this was never explained and is contextually undermined by his other remarks about transporting construction materials from house to house that weighed over one-hundred pounds. Krause's hearing testimony indicates that he would clean garages, move lumber at building sites, and replace doors. Again, this suggests Krause never acquired any "customer service skills" or even property management skills.

Even if such skills arose, the ALJ failed to issue any findings regarding the work adjustment involved.

(Pl.'s Br. at 14-15 (internal citations omitted).) In addition, Krause argues that VE Snowden's

testimony was at least in part inconsistent with the DOT as VE Snowden testified Krause's skills

transferred to a project manager position with an SVP[4] of 7, yet the DOT classifies project manager as having an SVP of 8.  (Pl.'s Br. at 16.)

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Newton,* 209 F.3d at 453.  "Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding."  *Newton,* 209 F.3d at 453.  In this case, the ALJ supported his determination at Step 5 by relying upon the testimony of the VE.

A VE is called to testify because of his familiarity with job requirements and working conditions.  *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)).  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Id*.  In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job."  *Fields*, 805 F.2d at 1170.

A claimant's work experience encompasses the skills and abilities acquired through work done in the past, which shows the type of work a claimant may be expected to do.  20 C.F.R. § 404.1565.  After identifying the skills a claimant acquired through past relevant work, the ALJ

---

[4] SVP, or Specific Vocational Preparation, refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See* DOT app. C, 1009 (rev. 4th ed.1991).  Unskilled work usually requires less than thirty days of training, which corresponds to an SVP level of 1 or 2; semi-skilled work corresponds to an SVP level of 3 or 4; and skilled work requires an SVP level of 5 or higher. SSR 00–4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).

must make a determination regarding whether or not those skills are transferable to other occupations.  Transferability applies only to situations "when the skilled or semi-skilled work activities [claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1); *see* SSR 82-41, 1982 WL 31389, at *2 (S.S.A. 1982). The regulations state that transferability is most probable for jobs requiring the same or a lesser degree of skill, or jobs which use similar tools, machines, materials, and processes.  *See* 20 C.F.R. § 404.1568(d)(2). Transferability thus depends upon the similarity of the "occupationally significant work activities" required by various jobs. 20 C.F.R. § 404.1568(d)(1).  However, exact similarity between jobs is not required for a finding of transferability. *See* § 404.1568(d)(3).  Only particularly specialized skills or those acquired in "an isolated vocational setting (like many jobs in mining, agriculture, or fishing)" are "not readily usable in other industries, jobs, and work settings" and thus are not transferable. *Id.*  Because the transferability of a skill is a determination ultimately made by the ALJ, the vocational expert's testimony must be specific enough to provide the ALJ with enough information to make an informed decision. *See Muehling v. Colvin*, No. 2:12-CV-013, 2013 WL 1194078, at *4 (N.D. Tex. Mar. 6, 2013).

A claimant's work experience encompasses the skills and abilities acquired through work done in the past, which shows the type of work a claimant may be expected to do.  20 C.F.R. § 404.1565.  When the transferability of skills is at issue, the ALJ must make certain findings of fact and include them in his decision.  SSR 82-41, 1982 WL 31389, at *7.  To find that a claimant has transferable skills, "the acquired work skills must be identified, and specific

occupations to which the acquired work skills are transferable" must be listed in the decision of

the ALJ. *Id.*; *Muehling,* 2013 WL 1194078, at *3.

As to the transferability of skills, after Krause testified regarding his past employment as

a housing rehab tech, warranty manager, and the specific things he had done in each job (Tr. 39-

41), the VE testified as follows:

> [ALJ:] All right.   Before I go—because I do have questions, but I think I'm going to go to the vocational expert first.   Before I put you under testimony, just based on those—or put you under oath, based on as he described those jobs, how would you—how were you going to characterize the exertional levels?

> [VE:] Well, his job as warranty manager, which is very similar to a project manager in construction, is considered light and skilled, with an SVP of 7. Now he's describing that he did some of the work and repairs as he checked them out, which moves it to the medium range.

> . . . .

> [ALJ:] Would you please identify the jobs that you found in the record?

> [VE:] Yes, your honor.   Working as a warranty manager that's considered light, with an SVP of 7.   And the housing or rehab technician for housing was also considered light with an SVP of 7.   As I indicated before, he did do some work on the properties themselves.   That would have moved it into medium range.

> [ALJ:] Okay, on both those jobs, right?

> [VE:]   Yes.

> . . . .

> [ALJ:] Okay.   If I ask you [to] consider a person Mr. Krause's age, education, and work history, with the ability to perform light work.   That's no lifting no more 10 pounds frequently, or 20 pounds occasionally, standing and walking for six out of eight hours, sitting for six.   We will put restrictions on that, only occasional postural of stooping, kneeling, crouching, crawling.   No climbing of ladders, ropes, or scaffolding.   We'll put a restriction—no working around

hazards, such an [sic] unprotected heights or dangerous moving machinery.  Let's take that alone.  With that, could such a person perform any past work?

[VE:]  No, sir.

[ALJ:]  All right.  Would there be any transferable skills to any other jobs?

[VE:]  He does have the skills in project management and overseeing the projects as far as deadlines, materials, and supplies, and that would go to a project manager position.

[ALJ:] Okay.

. . . .

[VE:]  Okay, there it is. All right, so we've got the project manager positions that would coordinate activities from the office.  They wouldn't go so much out in the field, so it puts it in the sedentary range; same skills that he uses, except he was more in the field.  This is considered sedentary work.  It is skilled. I have two different codes that are both—one's an SVP of 7.  Yeah, there—yeah, that's SVP of 7.  And the numbers [INAUDIBLE].  That's all right. . . .  All right, so if we look at those sedentary-level project management positions, we're looking at about 159,000 of those in the U.S. economy, and of those, Texas holds about 14,000.  That's directly transferable.  You're just doing more of the desk coordination, as opposed to being in the field.

[ALJ:] Okay, would that job allow a person to alternate sitting and standing frequently throughout the day?

[VE:]  Yes, it would.

. . . .

[ALJ:]  Would there be any other jobs with transferable skills?

[VE:]  With the detailed?

[ALJ:] Yes.

[VE:]  All right.  Let's see here.

[ALJ:] And I'd want all the other restrictions added to the—

13

[VE:]  Okay.  I thought so.

[ALJ:]  All frequent, alternating sitting and standing.

[VE:]  Well, the skills that I'm looking at is property management, customer service, and dealing with property and real estate operations.  Sorry this is taking a while, but it's a detailed job.  That looks close but it's not what I want.  Okay.  Well, that put that at a 5.  That's not the one I want.  We're going to stick with that number skill.  One second.  Okay.  There it is.  That is—the DOT calls it a work order clerk, and that's just coordinating the property maintenance.  It is considered sedentary with an SVP of 3, now the numbers.  At that particular group, we have about 270,000 of those in the U.S. economy and about 28,000 in Texas.

[ALJ:]  Okay.

[VE:]  And that would be—the skills that there wouldn't be a huge adjustment—or a major adjustment in industry job setting in the list.

[ALJ:]  Well, would there be more than—since this is a sedentary job, would there be more than very little adjustment?

[VE:]  No, there would not.

[ALJ:]  Okay.  In that job, if a person was restricted to only occasional overhead reaching, would that affect that job?

[VE:]  No, it would not.

[ALJ:]  If we restrict it to sedentary, would that be the only other sedentary job, if the RFC was at sedentary?

[VE:]  It would, because otherwise we'd get into too much change in industry, work functions, that kind of thing.

[ALJ:]  Okay.

[VE:]  And they would be considered moderate adjustments if he took those skills into a different industry.

. . . .

14

[ATTY:][5]      The job that you described as the work order clerk?

[VE:]   A repair order clerk.

[ATTY:]      A repair order clerk, I apologize.  You listed it as sedentary with an SVP of 3, is that correct?

[VE:]   Yes.

[ATTY:]      So it's at the lower end of semi-skilled work.  What skills, exactly, are transferring?

[VE:]   Those are the ones that I talked about earlier is the coordinating with the property repair, the working with—customer service, working with the public, or the customers.  The knowledge of repair and construction requirements, maintenance schedules that he had to maintain.

(Tr. 41-42, 50-55.)

As to the issue of transferability, the ALJ, in his decision, stated, "The vocational expert testified that the claimant's past relevant work as a warranty manager and rehabilitation technician for housing were skilled with a specific vocational preparation (SVP) code of seven and required the following skills: property management skills and customer service skills."  (Tr. 22.)

Contrary to Krause's arguments, the Court concludes that, based on the testimony of the VE at the hearing, the ALJ did have substantial evidence to support his decision at Step Five that, based on transferable work skills, Krause could perform the jobs of project manager and work order clerk that existed in significant numbers in the national economy.  (Tr. 22-23.)  In this case, it is clear that the ALJ thoroughly questioned the VE regarding transferability of work

_____

[5]At the hearing, Krause was represented by Michael Bilaciana.  (Tr. 31.)

skills at the hearing.  (Tr. 41-42, 50-55.)  In addition, as required by SSR 82-41, the ALJ

identified in his decision that Krause had the acquired transferable skills in project management

and customer service from his prior jobs as a housing rehab tech and warranty manager.  (Tr.

22.)  The ALJ based his decision on the VE's testimony that Krause had acquired project

management skills, which was described by the VE as overseeing project deadlines, materials,

and supplies.  (Tr. 51-52.)  In addition, the ALJ based his decision on the VE's testimony that

Krause had acquired customer service skills, which was described by the VE as working with the

public or customers.[6]  (Tr. 55.)  Furthermore, the ALJ, also as required by SSR 82-41, found that

such skills were transferable to two positions in the national economy: project manager and work

(or repair) order clerk.  (Tr. 23.)

    Moreover, contrary to Krause's claims, the ALJ did discuss work adjustment with the VE

at the hearing.  (Tr. 53-55.)  While the ALJ did not mention work adjustment *per se* in his

decision, any error is harmless as the VE specifically testified that there would not be a huge or

major adjustment to the job of work order clerk based on Krause's transferable skills.  (Tr. 53-

54.)  In fact, the VE testified there would be no more than "very little adjustment."  (Tr. 54.)

    While Krause complains that the ALJ did not cite any DOT codes for the jobs identified

as his past relevant work, Krause cites no support for his claim that such DOT numbers must be

identified by the VE.  *See Haas v. Barnhart,* 91 F. App'x 942, 948 (5th Cir.2004) ("[The

claimant] cites no support for his claim that the DOT numbers for positions identified by the VE

---

[6] Contrary to Krause's arguments, the ALJ explained the meaning behind customer service skills by defining such skills as working with the public or customers.  Such explanation distinguishes this case from *Muehling,* 2013 WL 1194078, at *4, in which the court found the VE's testimony that the claimant possessed "customer service skills" without further explanation was "insufficient" to support the ALJ's transferability determination.

16

must be given."); *McMillian v. Colvin*, No. 4:12-CV-661-A, 2014 WL 61172, at *5, (N.D. Tex. Jan. 6, 2014) ("Although not required to do so, the VE did not identify the specific DOT codes associated with the jobs of customer service representative and phone order clerk."); *Nichols v. Astrue,* No. 5:09–CV–18–DCB–JMR, 2010 WL 5690390, at *12 (S.D. Miss. Apr.20, 2010) ("Plaintiff does not cite any support for his claim that the DOT numbers for positions identified by the VE must be given."), *adopted in Nichols v. Astrue,* 5:09–CV18–DCB–JMR, 2011 WL 359141 (S.D. Miss. Feb.1, 2011)).

Moreover, Krause also complains that the ALJ erred in relying at Step Five on testimony from VE Snowden that the project manager position had an SVP of 7, while the DOT classified it as having an SVP of 8. (Pl.'s Br. at 16; *see* DOT § 189.117-030 (rev. 4th ed. 1991).) Krause complains that this error is "problematic because transferability is 'most probable or meaningful with jobs where the same or lesser degree of skill is required because most people are not expected to do more complex work than they have previously performed.'" (Pl.'s Br. at 16.) While Krause is correct, at least as to DOT § 189.117-030 for a project manager (director), the Court notes that SSR 00-4p clarifies that the DOT lists the ***maximum*** requirements for a position as it is generally performed, not the full range of requirements. SSR 00-4p, 2000 WL 1898704, at *3 (S.S.A. Dec. 4, 2000). Moreover, the Court does not need to determine whether the ALJ erred in relying on the VE's testimony that Krause could perform the job of project manager because the ALJ also determined that he could perform the job of work order clerk, which has an SVP of 3. Even assuming that the ALJ erred at Step Five in relying on the VE's testimony that he could perform his past relevant work as a project manager, any error is harmless because the

17

ALJ also found that Krause could perform another job. *See, e.g., Hallcy v. Astrue*, No. 5:09-CV-135-BG, 2010 WL 2605214, at *3 (N.D. Tex. May 27, 2010) ("[E]ven if the court were to assume, *arguendo*, that the ALJ's determination that [the claimant] could perform past work as a cashier was reached in error, any error must be considered harmless because the ALJ determined that she could perform another job she worked at in the past."). Because there is no error, remand is not required.

### C. Mental Impairments

Krause also argues that the ALJ erred in his duty to develop evidence of mental impairments based on evidence in the record relating to his mental impairments. (Pl.'s Br. at 17-20.) Krause claims that, although Krause was not treated by a psychiatrist, "he alleged disability due to anxiety and depression, he received anxiety medications, and the State agency consultative examiner noted signs of mental illness." (Pl.'s Br. at 17.) In addition, Krause claims that he "resolved the ALJ's error by submitting psychological testing from Dr. George Mount, Ph.D." to the Appeals Council after the ALJ's decision. (Pl.'s Br. at 20.) Krause claims that Dr. Mount's opinions would "eliminate the transferable work skills VE Snowden identified and result in a finding of disability under Grid Rule 202.06." (Pl.'s Br. at 20.)

In this case, the ALJ considered whether Krause's impairments of depression and anxiety were severe. (Tr. 15-16.) The ALJ specifically determined that Kraus's depression and anxiety resulted in no more than mild restriction in activities of daily living, mild difficulties in maintaining social functioning and concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. 16.) The ALJ considered, *inter alia*, the following

18

evidence in the record relating to Krause's mental impairments: (1) Krause's testimony; (2) the

objective medical evidence showing that Krause had not experienced any episodes of

decompensation of extended duration nor required inpatient hospitalization or any other

treatment beyond medication to control his symptoms; (3) statement by Krause's treating

physician that he was not treating Krause for mental impairments (Tr. 267-69); and (4) opinions

from state agency medical consultants that Krause had no medically determinable mental

impairments (Tr. 277-90, 314). (Tr. 16-17.) In addition, the ALJ stated:

> No treating or examining source noted clinical signs of any limitations
> related to these impairments. Likewise, the State agency doctor did not indicate
> any limitations related to these impairments. There is no indication in the record
> that the claimant required anything more than conservative treatment for these
> impairments. Accordingly, the undersigned finds these impairments to be "non-
> severe."

(Tr. 17.)

Based upon the above-referenced evidence, the Court concludes that substantial evidence

supports the ALJ's finding that Krause's depression and anxiety were not severe. The ALJ's

decision is not subject to reversal, even if there may be substantial evidence in the record that

would have supported the opposite conclusion, because substantial evidence also supports the

conclusion that was reached by the ALJ. *See Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D.

Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v.

Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). Because substantial evidence supports the ALJ's

decision, the ALJ did not have a duty to develop the record regarding Krause's alleged mental

impairments. Moreover, based on the evidence already in the record as set forth above, the

newly submitted evidence from Dr. Mount did not dilute the record to such an extent that the ALJ's determination regarding Krause's mental impairments became insufficiently supported.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **February 20, 2015** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections

20

are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 6, 2015.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

21